DOA
04/27/22

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America | CRIMINAL COMPLAINT |
| v. | CASE NUMBER:   22-9128 MJ |
| Omar Martinez and Juan Ramon Martinez | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the dates described in Attachment A in the County of Maricopa in the District of Arizona, the defendants violated 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D); 18 U.S.C. §§ 922(o) and 924(a)(2); 18 U.S.C. §§ 922(a)(6) and 924(a)(2); and 18 U.S.C § 924(a)(1)(A) offenses described as follows:

**See Attachment A – Description of Counts**

I further state that I am a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and that this complaint is based on the following facts:

**See Attachment B – Statement of Probable Cause Incorporated by Reference Herein.**

Continued on the attached sheet and made a part hereof:       ☒Yes       ☐ No

AUTHORIZED BY: Brett A. Day, AUSA *BDay*

| | |
|---|---|
| SA Christian Villarruel, ATF | CHRISTIAN VILLARRUEL   *Digitally signed by CHRISTIAN VILLARRUEL Date: 2022.04.28 22:09:09 -07'00* |
| Name of Complainant | Signature of Complainant |

Sworn to before me electronically

| | | |
|---|---|---|
| April 29, 2022    @7:37am | at | Phoenix, Arizona |
| Date | | City and State |

| | |
|---|---|
| HONORABLE EILEEN S. WILLETT United States Magistrate Judge | *EswWillett* |
| Name & Title of Judicial Officer | Signature of Judicial Officer |

## ATTACHMENT A

## DESCRIPTION OF COUNTS

## COUNT 1

On or between about February 10, 2021 to January 8, 2022, in the District of Arizona, Defendant OMAR MARTINEZ, not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

In violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D).

## COUNT 2

On or about April 27, 2022, in the District of Arizona, Defendants OMAR MARTINEZ and JUAN RAMON MARTINEZ did knowingly attempt to possess and transfer a machinegun, that is, a fully automatic AK-47 rifle, and a fully automatic M-60 rifle.

All in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

## COUNTS 3-4

On or about the dates listed below, in the District of Arizona, Defendant OMAR MARTINEZ knowingly made false statements and representations in connection with the acquisition of a firearm to the businesses listed below, which were intended and likely to deceive the businesses as to a fact material to the lawfulness of a sale of a firearm by the business, each of which was licensed under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of each listed business, in that Defendant OMAR MARTINEZ did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, in each of the counts below stating that he was the actual buyer or transferee of the firearm, and was not buying the firearm on behalf of another person, whereas in truth and fact, Defendant OMAR MARTINEZ knew that he was buying the firearm on behalf of another person:

-1-

| Count | Date | Business |
|-------|------|----------|
| 3 | 12/14/2021 | KME Firearms, San Tan Valley, Arizona |
| 4 | 1/08/2022 | Arizona Arms, Chandler, Arizona |

In violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## COUNTS 5-6

On or about the dates listed below, in the District of Arizona, Defendant OMAR MARTINEZ knowingly made false statements and representations to the businesses listed below, each of which was licensed under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of each listed business, in that Defendant OMAR MARTINEZ did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, in each of the counts below stating he resided at an address on Harding Avenue in Coolidge, Arizona, whereas in truth and fact, Defendant OMAR MARTINEZ knew that he resided at a different address:

| Count | Date | Business |
|-------|------|----------|
| 5 | 12/14/2021 | KME Firearms, San Tan Valley, Arizona |
| 6 | 1/08/2022 | Arizona Arms, Chandler, Arizona |

In violation of Title 18, United States Code, Section 924(a)(1)(A).

-2-

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

Your Affiant, Christian Villarruel, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, hereby deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, & Explosives (ATF). I have been appointed as a Special Agent since May 2019. I have received training in the enforcement of the Federal firearms and explosive laws. I have investigated individuals for federal firearms violations, which included firearms trafficking.

2. The facts in this affidavit come from my personal observations, my training and experience, information obtained from other agents involved in the investigation, and information obtained from witnesses. Your Affiant submits there is probable cause to believe that violations of Title 18, United States Code (U.S.C.) Sections 922(a)(1)(A), 923(a) and 924(a)(1)(D) which make it unlawful for a person to deal firearms without a license; 18 U.S.C. § 922(o) and 924(a)(2) which states machineguns manufactured on or after May 19, 1986, may only be transferred to or possessed by Federal, State, and local government agencies for official use; 18 U.S.C. § 922(a)(6) and 924(a)(2) which make it unlawful for a person to make a material false statement or identification in the acquisition or attempted acquisition of firearms; and 18 U.S.C. § 924(a)(1)(A) which make it unlawful for a person to knowingly make false statements or representations concerning the information required by law to be kept in the records of a Federal Firearms Licensee (FFL) in connection with acquiring or attempting to acquire firearms from an FFL.

## PROBABLE CAUSE

3. On June 8, 2021, your Affiant received information from the ATF Crime Gun Intelligence Center (CGIC) regarding an individual identified as Omar MARTINEZ (MARTINEZ). According to the information from CGIC, MARTINEZ had 29 firearm purchases and eight multiple sales of firearms from April 14, 2021, to June 2, 2021. During this time, MARTINEZ had spent more than $10,600 in cash on the firearms.

1

4.    A review of the Federal Licensing System (FLS) which keeps track of all Federal Firearms Licenses (FFLs) revealed that MARTINEZ is/was not an FFL.  A review of Arizona Department of Economic Security Records (DES) for MARTINEZ showed no reported wages or income at the time he purchased these firearms.  On each of the ATF Form 4473s (Firearm Transaction Record) that MARTINEZ executed to acquire the firearms, MARTINEZ listed his current address as 121 W. Harding Ave., Coolidge, AZ 85128.

5.    On June 18, 2021, your Affiant traveled to 121 W. Harding Ave., Coolidge, AZ 85128 to attempt to speak with MARTINEZ.  After knocking on the front door of the home, SAs were greeted by Anita (hereinafter "Anita").  Your Affiant told Anita he was looking to speak to MARTINEZ.  Anita stated MARTINEZ was not home.  Your Affiant asked Anita what her relation to MARTINEZ was, and Anita stated she was MARTINEZ's aunt.  Your Affiant asked if MARTINEZ resided at the address.  Anita stated MARTINEZ would sometimes stay the night.  Your Affiant asked if MARTINEZ paid rent at the residence, and Anita said no.  Your Affiant asked if MARTINEZ had a bedroom inside the residence, and ANITA said no.  SA Morales asked if there was another place where MARTINEZ stayed, and ANITA replied MARTINEZ stayed at various locations.  Your Affiant asked if MARTINEZ had a phone number.  Anita negated and explained MARTINEZ was unable to pay his phone bill because MARTINEZ did not have a job.  Your Affiant asked how long MARTINEZ had been unemployed, and ANITA answered, "a while."  SA Morales asked how ANITA could get in touch with MARTINEZ.  Anita answered MARTINEZ would just show up to the house.  SA Morales asked if MARTINEZ left any belongings inside the residence, and ANITA said no.  Your Affiant provided ANITA his phone number and asked that ANITA have MARTINEZ give your Affiant a call.

6.    Later that same day, your Affiant received a telephone call from MARTINEZ.  MARTINEZ stated he had been notified that your Affiant was looking to speak to him.  Your Affiant identified himself as an SA with ATF.  Your Affiant stated he needed to speak

with MARTINEZ in person.  Your Affiant asked if MARTINEZ would be available to meet with SAs the following week, and MARTINEZ agreed.

7.     On June 23, 2021, your Affiant once again traveled to 121 W. Harding Ave., Coolidge, AZ 85128 to attempt to speak with MARTINEZ.  SAs once again contacted MARTINEZ's aunt, Anita.  Anita stated MARTINEZ was not at the residence.  Anita again stated MARTINEZ did not reside at that address.  Anita then attempted to contact MARTINEZ telephonically but was unsuccessful in reaching him.  SA Sander asked Anita what kind of vehicle MARTINEZ drove, and ANITA responded MARTINEZ did not have a vehicle.  Anita stated MARTINEZ walked everywhere.  Anita explained MARTINEZ used her residence as his mailing address, however, MARTINEZ did not reside there.  SA Atencio asked how long MARTINEZ had not lived there for, and ANITA stated MARTINEZ never lived at the address.  SAs once again departed the residence.

8.     On December 14, 2021, your Affiant was notified of multiple firearms purchased by MARTINEZ from FFL KME Firearms.  Your Affiant learned the firearms were purchased on December 11, 2021.  According to the ATF Form 4473, MARTINEZ purchased the following firearms:

      a.     **WBP/Arms of America, Mini Jack, Pistol, Cal: 7.62X30, SN# MJ10770**

      b.     **WBP/Arms of America, Mini Jack, Pistol, Cal: 7.62X30, SN# MJ10795**

      c.     **WBP/Arms of America, Mini Jack, Pistol, Cal: 7.62X30, SN# MJ10794**

9.     In addition, MARTINEZ once again identified his current residence and address as 121 W. Harding Ave., Coolidge, AZ 85128 on the ATF Form 4473 and signed his name certifying the ATF Form 4473 in block 22.

10.     On December 13, 2021, an individual identified as J. CAMPBELL (hereinafter "CAMPBELL") was arrested at the DeConcini Port of Entry (POE) in Nogales, Arizona after Customs and Border Protection (CBP) officers discovered firearms, firearms parts,

3

and firearms magazines in the rear tire well of CAMPBELL's vehicle. Homeland Security Investigations (HSI) SA Gomez later responded to the DeConcini POE and conducted a post-*Miranda*, custodial interview of CAMPBELL. During the interview, CAMPBELL admitted the vehicle belonged to a friend who CAMPBELL identified as SANTOS Martinez. In addition, CAMPBELL stated the individual in his phone saved as Omar (MARTINEZ) was the one in charge of purchasing the weapons.

11.     Three firearms were seized during this incident and the firearms were later traced by ATF. The original purchaser of one of the firearms was identified as MARTINEZ.

12.     On January 8, 2022, ATF Industry Operations Investigator (IOI) Rivera and Lopez were present at the Crossroads of the West Gun Show at the Pima County Fairgrounds in Tucson, AZ. ATF IOIs are sometimes present at gun shows so that they may answer any questions the public or Federal Firearms Licensees (FFLs) may have regarding federal gun laws. While at the Crossroads of the West Gun Show, IOI Rivera observed a group of individuals who raised suspicion since they appeared to be carrying bundles of cash in United States currency. In addition, the individuals were observed going to various FFL vendor booths and looking at firearms of similar make, model, and caliber. Your Affiant also knows repeatedly purchasing firearms of similar make, model, and caliber to be an indicator of firearms trafficking and or dealing firearms without a license.

13.     On January 11, 2022, IOI Rivera spoke with one of the FFL vendors that was present during the Crossroads of the West Gun Show, and where one of the individuals was observed purchasing firearms. IOI Rivera asked the FFL to see the ATF Form 4473 (Firearm Transaction Record) corresponding to the firearm transaction made by the individual; IOI Rivera noted the name of the purchaser to be MARTINEZ. In addition, MARTINEZ purchased the following three firearms from Arizona Arms:

    a.     **Beretta, 92, Pistol, 9 mm, SN# A285827Z**

    b.     **Radom, Hellpup, Pistol, 7.62X39, SN# PAC1162706**

    c.     **Radom, Hellpup, Pistol, 7.62X39, SN# PAC1165127**

4

14.     After querying MARTINEZ in ATF databases, IOI Rivera learned your Affiant had an open ATF investigation on MARTINEZ in which MARTINEZ was suspected of firearms trafficking.  IOI Rivera contacted your Affiant to alert him of what he observed regarding MARTINEZ at the Crossroads of the West Gun Show.  IOI Rivera also provided your Affiant photos of MARTINEZ and the other individuals who accompanied him (MARTINEZ).  It should be noted one of the other individuals also pictured in the photos to be SANTOS Martinez.

 

15.     On March 24, 2022, your Affiant with the assistance of Coolidge Police Department (CPD) Detective (Det.) Lucas contacted one of the individuals who purchased one of the firearms recovered at the DeConcini POE.  The individual ("IND 1") was contacted at his residence.  Your Affiant asked IND 1 how many firearms he purchased in the last year.  IND 1 estimated he purchased 10 firearms since the beginning of 2021.  Your Affiant asked how many of the estimated 10 firearms IND 1 still had in his possession.  IND 1 replied he did not have any.  Your Affiant stated SAs needed to speak with IND 1 because IND 1 was associated with two firearm recoveries. Your Affiant stated IND 1's firearms were recovered 108 days and 9 days after IND 1 purchased them from FFLs.  Your Affiant stated one firearm was recovered at the border of Mexico, while the other firearm was recovered in Mexico.  SA Santome asked if IND 1 knew MARTINEZ.  IND 1 responded he knew of MARTINEZ and knew what the SAs were referring to.  Your Affiant asked for further clarification.  IND 1 stated MARTINEZ posted a lot of firearms on Facebook.  SAs stated they were aware IND 1 and MARTINEZ were friends.  SAs stated it appeared as though

IND 1 was providing firearms to MARTINEZ. SAs stated IND 1 needed to be forthcoming with them.

16.    During the interview, IND 1 admitted to SAs that he (IND 1) had in fact purchased firearms for MARTINEZ. Your Affiant asked how IND 1 knew what firearms to purchase. IND 1 stated MARTINEZ instructed IND 1 to purchase whichever firearms were cheap. Your Affiant asked if MARTINEZ gave IND 1 money ahead of time to purchase the firearms, and IND 1 answered "yes." Your Affiant asked how much money IND 1 made per firearm he purchased for MARTINEZ, and IND 1 stated a hundred dollars. Your Affiant asked if IND 1 would contact MARTINEZ immediately after purchasing the firearm, and IND 1 stated "yes." Your Affiant asked where IND 1 would meet MARTINEZ to give him the firearm. IND 1 recalled meeting MARTINEZ in the Walmart parking lot.

17.    On April 14, 2022, your Affiant was notified by ATF Las Vegas that an FFL had information regarding an individual identified as MARTINEZ. Your Affiant contacted the FFL and spoke with the FFL owner.

18.    The owner explained he had met MARTINEZ while the owner was working the Crossroads of the West Gun Show on January 2, 2022. The owner explained MARTINEZ purchased two firearms from his vendor booth. After purchasing the two firearms, MARTINEZ asked if the owner would be returning to the next gun show in Arizona. MARTINEZ stated he wanted to purchase seven Glock 17 pistols and seven AK-47 Hellpup pistols. The owner found the order to be suspicious since the firearms were of the same make, model, and caliber, as well as the amount of firearms MARTINEZ was wanting to purchase.

19.    On or around January 14, 2022, the owner stated he had returned to work in another Arizona gun show where the owner once again met with MARTINEZ. The owner stated MARTINEZ had purchased 13 firearms from him including seven Glock 17 pistols, and 6 AK-47 Hellpup pistols.

6

20.     Upon purchasing the firearms, MARTINEZ told the owner he wanted to purchase RPD rifles.  An RPD rifle is a belt-fed semi-automatic rifle that can be easily converted to a fully automatic machinegun.  The owner asked MARTINEZ what price MARTINEZ was looking to pay for the rifles so that the owner could determine if MARTINEZ was inquiring about purchasing semiautomatic rifles or inquiring about fully automatic machineguns.  The owner stated MARTINEZ had insinuated that money was not an object.  The owner told MARTINEZ he would be in contact if he was able to find a seller that could fulfill MARTINEZ's request of RPD rifles.  Your Affiant asked if the owner would be willing to introduce an ATF Undercover (UC) Agent to MARTINEZ as a possible seller of firearms, and the owner agreed.

21.     On January 17, 2022, the owner notified your Affiant he had contacted MARTINEZ on the telephone.  During the conversation, the owner told MARTINEZ he found a seller of RPD rifles that could shoot 700 rounds per minute if MARTINEZ was interested in purchasing them.

22.     The following day on January 18, 2022, ATF UC1 contacted MARTINEZ on the telephone. UC1 stated they had received MARTINEZ's phone number from the FFL owner.  UC1 stated they were told MARTINEZ was interested in purchasing firearms that UC1 had access to.  MARTINEZ stated he wanted to purchase AK rifles.  UC1 stated they had some AK rifles that were machineguns.  UC1 asked if MARTINEZ also wanted belt fed rifles, and MARTINEZ affirmed.  MARTINEZ told UC1 that he bought, sold, and traded firearms.  MARTINEZ stated he was looking to purchase RPD rifles but was told he might need a tax stamp to purchase them.  UC1 stated MARTINEZ could meet with UC1 to see the firearms UC1 had available.

23.     UC1 explained they did not like going to gun shows because they could be seen there.  UC1 explained that he/she (UC1) preferred to keep things quiet, and MARTINEZ would not have to do the paperwork.  MARTINEZ asked UC1 where he would have to go to see the firearms.  UC1 stated he/she (UC1) needed to be in Phoenix on Thursday to make a delivery of firearms.  UC1 stated the firearms UC1 would show MARTINEZ were

7

already sold to another purchaser.  UC1 stated MARTINEZ could at least see the firearms UC1 had access to.  UC1 stated MARTINEZ did not have to purchase any firearms but could make an order if he (MARTINEZ) wanted to.

24.    UC1 stated that they could fulfill the order within a week if MARTINEZ decided to purchase firearms.  MARTINEZ agreed and stated he spent a lot of money.  UC1 stated they could discuss firearms and prices when they met later in the week.  UC1 informed MARTINEZ the RPD rifles that UC1 had access to were illegal.  UC1 asked if MARTINEZ was still interested, and MARTINEZ stated "yes."  UC1 repeated there was no pressure.  MARTINEZ expressed interest in wanting to work with UC1.  Over the next several days, UC1 continued to communicate with MARTINEZ via text message.  MARTINEZ and UC1 agreed to meet at an undisclosed ATF location in Phoenix, AZ on April 20, 2022.

25.    On April 20, 2022, MARTINEZ and another individual identified as JUAN RAMON MARTINEZ (hereinafter "JUAN") arrived at the undisclosed ATF location in Phoenix, AZ in a Chevy Malibu bearing AZ license plate CSW5483.  A subsequent query of this vehicle showed the vehicle to be registered to JUAN.

26.    Upon MARTINEZ and JUAN meeting with UC1 and UC2, both ATF UCs presented MARTINEZ and JUAN with various semiautomatic pistols and rifles of various make, model, and calibers.  Afterwards, UC1 and UC2 presented various fully automatic machineguns to both MARTINEZ and JUAN.  UC1 stated that if MARTINEZ wanted to place an order of firearms, UC1 could have the firearms within a week.  UC1 stated MARTINEZ needed to be aware that the machineguns were highly illegal if MARTINEZ did want them.  MARTINEZ asked UC1 the price of a fully automatic Saco, MK-43, machinegun, and UC1 stated $12,000.  MARTINEZ stated he would want to place an order for one.  JUAN instructed MARTINEZ to get two instead, and MARTINEZ agreed.  UC1 and UC2 stated they would meet with MARTINEZ and JUAN the following week to fulfill their order of the machineguns.  After inspecting the firearms, MARTINEZ and JUAN

8

departed the undisclosed ATF location.  MARTINEZ continued to text with UC1 to inquire about other machineguns that UC1 might have available.

27.    On April 21, 2022, MARTINEZ contacted UC1 via text message.  MARTINEZ asked how much UC1 would charge for 8 AK-47 rifles and an M-60 rifle.  MARTINEZ stated he was not sure if he (MARTINEZ) would have enough money to purchase all the firearms.  UC1 stated that a fully automatic AK-47 rifle would cost MARTINEZ $3,000.

28.    On April 22, 2022, MARTINEZ texted UC1 and stated he wanted to order one fully automatic AK-47 rifle, one fully automatic M-60 rifle, and seven AK-47 semiautomatic rifles.  UC1 stated he/she (UC1) would have the firearms ready for MARTINEZ the following week and that the total price would be $20,000, to which MARTINEZ agreed.

29.    On April 26, 2022, UC1 notified MARTINEZ that MARTINEZ's shipment of firearms had arrived.  UC1 stated they could meet MARTINEZ the following day at the undisclosed ATF location at 2:00 p.m., and MARTINEZ agreed.  MATRTINEZ also inquired about the price for fully automatic Beretta 92 pistols.  UC1 stated UC1 would try to find a price for MARTINEZ.

30.    The following day on April 27, 2022, at approximately 2:40 p.m., MARTINEZ was observed by ATF mobile surveillance walking towards the undisclosed ATF location. After greeting MARTINEZ, UC1 began to show MARTINEZ a semiautomatic AK-47 rifle that MARTINEZ had ordered.  UC 1 and UC 2 then showed MARTINEZ a fully automatic AK-47 rifle and explained the difference between the firearms.  UC 1 explained that the fully automatic AK-47 rifle was illegal.  MARTINEZ told UC 1 and UC 2 that he wanted to open his own gun store in Coolidge, Arizona.  Afterwards, MARTINEZ withdrew a bundle of money from his pocket and handed it UC 1 to count.  MARTNEZ stated he had forgotten the other part of the money inside the vehicle MARTINEZ came in.  UC 1 and UC 2 began to count the money and stated MARTINEZ had given them a total of $10,100.

31.    MARTINEZ repeated to UC 1 and UC 2 he had plans to open his own gun store. MARTINEZ stated he thought about displaying the fully automatic rifle in the front of the store.  UC 1 and UC 2 stated that MARTINEZ should not display the firearm because it

9

was illegal to have it in his (MARTINEZ) possession. UC 1 stated the fully automatic M-60 rifle MARTINEZ was purchasing could not be registered.

32. Shortly afterwards, JUAN arrived at the undisclosed ATF location in a black Chevy Silverado pickup truck bearing Arizona license plate 7PA0KB. A subsequent query of this vehicle showed JUAN to be the registered owner. After parking the vehicle, JUAN exchanged greetings with UC 1 and UC 2. JUAN then withdrew a bundle of money from his back pocket and handed it to MARTINEZ. MARTINEZ then handed the bundle of money to UC 2 so that UC 2 could count the remaining money needed to purchase the firearms.

33. At that time, UC 1 began to explain to JUAN how to distinguish the difference between a fully automatic AK-47 rifle and a semiautomatic AK-47 rifle. UC 1 stressed that JUAN needed to be careful with what he did with the fully automatic AK-47 rifle because it was illegal to have, and JUAN responded in the affirmative. After showing JUAN the remaining firearms, including the fully automatic M-60 rifle, JUAN inquired about Barrett .50 caliber rifles. UC 1 and UC 2 excused themselves to retrieve a Barrett .50 caliber rifle to show JUAN. At that time, members of the ATF Special Response Team (SRT) executed the federal arrests of MARTINEZ and JUAN.

## Firearm Recoveries to Date

34. To date, MARTINEZ is associated with five firearms recoveries. A Firearms Trace Summary will provide the "Time to Crime" (TTC) for a firearm. TTC is the amount of time between the retail sale of a firearm by an FFL and its recovery by law enforcement. ATF considers a TTC of less than 3 years as a potential indicator of firearms trafficking. The following are the firearm recoveries associated with MARTINEZ:

- On 02/10/2021, MARTINEZ purchased a **Pioneer Arms Corporation, Hellpup, Pistol, Cal: 762**, **SN# PAC1145202**, from FFL AJI Sports. The Phoenix Police Department (PPD) recovered this same firearm 140 days later.

- On 02/17/2021, MARTINEZ purchased a **Sccy Industries, CPX-1, Pistol,**

10

**Cal: 9**, **SN# C091460** from FFL On Sight Shooting School.  The Tempe Police Department (TPD) recovered this same firearm 417 days later.

- On 05/20/2021, MARTINEZ purchased a **Glock, 17Gen, Pistol, Cal: 9, SN#BTMX780** from FFL Chandler Tactical Firearms. the Sonora State Public Safety Police and Mexican National Guard recovered this same firearm 68 days later in Nogales, Sonora, Mexico.

- On 12/11/2021, MARTINEZ purchased a **Wytwornia Broni Jacek Popinski, Mini Jack, Pistol, Cal: 762, SN# MJ10794** from FFL KME Firearms. Customs and Border Protection (CBP) recovered this same firearm two (2) days later at the Nogales Port of Entry.

- On 1/8/2022, MARTINEZ purchased a **Pioneer Arms, Hellpup, Pistol, Cal: 762, SN# PAC1162706** from Arizona Arms. Mexican Customs and Mexican National Guard recovered this same firearm two (2) days later in Nogales, Sonora, Mexico.

## REQUEST FOR AUTHORIZATION

35.    For these reasons, your Affiant submits that there is probable cause to believe Omar MARTINEZ committed violations of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D) (Dealing Firearms without a License); 18 U.S.C. §§ 922(o) and 924(a)(2) (Attempted Transfer or Possession of a Machinegun); 18 U.S.C. §§ 922(a)(6) and 924(a)(2) (Material False Statement or Identification in Acquisition or Attempted Acquisition of a Firearm); and 18 U.S.C. § 924(a)(1)(A) (False Statements Concerning Information in the Records of a Federal Firearms Licensee (FFL) in Connection with Acquiring or Attempting to Acquire Firearms from an FFL).

36.    Your Affiant also believes there is probable cause to believe JUAN Ramon Martinez committed violations of 18 U.S.C. §§ 922(o) and 924(a)(2) (Attempted Transfer or Possession of a Machinegun).

11

37. I declare under penalty of perjury under the laws of the Unites States of America that the forgoing is true and correct.

CHRISTIAN VILLARRUEL
Digitally signed by CHRISTIAN VILLARRUEL
Date: 2022.04.28 22:09:46 -07'00'

CHRISTIAN VILLARRUEL
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Telephonically
Subscribed and sworn to before me this 29th day of April, 2022.

_EsWillett_

HONORABLE EILEEN S. WILLETT
United States Magistrate Judge

12